Commonwealth *v.* Shorter, Appellant.

Argued November 25, 1968. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edmund Pawelec,* with him *Samuel M. Lehrer,* for appellant.

*Edward G. Rendell,* Assistant District Attorney, with him *Lewis P. Mitrano* and *James D. Crawford,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, April 23, 1969:

The appellant, Benjamin Shorter, was convicted by a jury in Philadelphia County of voluntary manslaughter. Motions in arrest of judgment or a new trial were dismissed, and a sentence of imprisonment was imposed. Shorter appeals from the judgment.

The only evidence at trial was offered by the Commonwealth. This evidence, which consisted of the testimony of Shorter's son, two police officers and a medical officer, disclosed the following facts:

Shorter lived in a third floor apartment with Sarah J. Davis to whom he was not married. On Saturday, February 20, 1965, Shorter gave Sarah Davis some money to go shopping for groceries. She did not return until Sunday, February 21st. When she returned, Sarah Davis was in an intoxicated condition and had not purchased the groceries. An argument ensued during which Shorter pushed Sarah Davis and slapped her on the face "six or eight" times with his open hand causing her to fall to the floor. In the process, she hit her head on a stove. Because she was unable to rise, Shorter and his son, who was present during the occurrence, lifted her from the floor and placed her upon a bed. She was bleeding from the nose. Shorter's son, who lived on the first floor of the same building, left his father's apartment about twenty minutes later.

On Monday morning, February 22nd, Shorter's son approached his father's apartment to inquire as to Sarah Davis' health. Shorter was standing in the doorway; as he stood in the hallway outside Shorter's apartment, the son heard Sarah Davis say from inside the apartment that she felt all right.

On Wednesday and Thursday, February 24th and 25th, Shorter stayed in his son's apartment.

On Friday, February 26th, Shorter returned to his son's apartment and told his son that Sarah Davis was dead and asked his son to walk with him to the police station, because "I'm going to turn myself in."

When Shorter arrived at the police station, he told an officer in charge that he wanted to turn himself in. When asked why, Shorter stated that on the previous

weekend he had been drinking with his girl friend and that during an argument, she fell and hit her head on a stove. Shorter also said that after procuring some medication for her, he left the scene and did not return until Friday when he found her dead. Another officer, who saw Shorter a little later observed that his right hand was badly swollen.

A medical examiner who examined Sarah Davis' dead body at the scene on February 26th and who later performed a postmortem examination detailed the condition of the body as follows:

There was (1) a deep, two and one-half inch long laceration in the area above the right ear; (2) a one and one-half inch long laceration of the right ear; (3) an oblique three-fourths inch long laceration on the neck below the right ear; (4) a five and one-half inch, red-purple discolored area of the skin on the right of the cheek; (5) a gaping one-half inch laceration of the forehead above the right eyebrow; (6) a blue-purple discolored area of the skin on the left upper lip measuring three-fourths by five-eighths of an inch; (7) an oblique two by one inch laceration at the root of the nose; (8) a discoloration of the skin in the area of the left chin measuring one-half by three-fourths of an inch; (9) a swelling and discoloration on the back of the left hand measuring four by two and one-half inches; (10) a discoloration and bruising of the skin on the left lower arm; (11) multiple areas of discoloration varying in size from one-half inch to one and three-fourths inches on the inner and outer surfaces of both knees; (12) a crosswise fracture of the breastbone at the level of the space between the second and third ribs; (13) fractures of the first, second, third, fourth, seventh and eighth ribs on the left side of the body; (14) fractures of the ribs from the first to the ninth inclusive on the right side of the body; (15) compound

comminuted fractures of the nose; (16) and multiple bruises and tears of the skin of the scalp. This medical witness then stated that the multiple injuries, outlined above, caused the victim's death; while he could not say when death occurred, the medical examiner estimated that it happened two or three days before February 26th, "give or take a day." The medical examiner also stated that he did not know how soon death occurred after the injuries were inflicted, but he did say that "perhaps she survived a few hours."

Shorter contends that the trial evidence does not support a finding of guilt "higher than involuntary manslaughter." In support of this position, he argues that the most the evidence establishes is that he unlawfully slapped Sarah Davis a few times on Sunday, February 21st, which caused her to fall and hit her head on a stove; and that the medical examiner's testimony establishes that the injuries which caused Sarah Davis' death could not have been inflicted earlier than Monday, February 22nd. We cannot accept this argument.

In view of the jury's verdict, the evidence must be read in a light most favorable to the Commonwealth; and the Commonwealth is entitled to every reasonable inference arising from that evidence. *Commonwealth v. Tabb*, 417 Pa. 13, 207 A. 2d 884 (1965), and *Commonwealth v. Reid*, 432 Pa. 319, 247 A. 2d 783 (1968). Uncontradicted testimony establishes that Shorter inflicted serious injuries upon Sarah Davis on Sunday, February 21st; that he was angry and sufficiently provoked to inflict violence upon her; that he was with her on Monday, February 22nd; that he had a feeling of guilt for her death as was evidenced by his statements to his son and to the police; that in reporting her death to the police, he concealed incriminating facts and told only half-truths; and that on February

26th, his hand was severely swollen, indicating a kind of trauma to it more severe than would be caused by slapping a person with an open hand. In view of these facts, we cannot say, as a matter of law, that the jury could not properly conclude that Shorter caused Sarah Davis' death through violent means.

We have considered the remaining assignments of error and find them to be without merit.

Judgment affirmed.